UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | |
|---|---|
| Robert D. Beggs and Julianne C. Beggs, and Super Spray Booms, LLC, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) **COMPLAINT FOR** ) **INJUNCTIVE RELIEF** ) *1:05cv126* |
| Bismarck Phoenix Equipment, Inc., | ) ) |
| Defendant. | ) |

The plaintiffs, by and for their Complaint against Defendant, state and allege as follows:

### I.    JURISDICTIONAL ALLEGATIONS.

1.1.    Robert D. Beggs ("Beggs") and Julianne C. Beggs are residents of Joshua Tree, California.

1.2.    Super Spray Booms, LLC, ("Super Spray Booms") is a Wisconsin Corporation with its primary business location in Plainfield, Wisconsin.

1.3.    As identified on the Master Agreement between the parties, Bismarck Phoenix Equipment, Inc. ("Bismarck Phoenix") is a North Dakota Corporation, with its primary place of business in Alberta, Canada.

1.4.    The amount in controversy exceeds $75,000. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1332.

### II.    FACTUAL ALLEGATIONS.

2.1.    <u>Background</u>

2.1.1.    In the mid-1990s, Beggs designed a telescoping spray boom, which he called the "Super Spray Boom." Beggs applied for and received two patents for the design.

2.1.2. To manufacture and market the "Super Spray Boom," Beggs formed a limited liability company, Super Spray Booms, LLC and licensed the patents to it.

2.1.3. To fund the enterprise, Super Spray Booms secured an initial Small Business Administration loan of $150,000.00 through Farmers State Bank of Waupaca, Wisconsin ("Farmers State Bank"). Later Super Spray Booms borrowed another $45,000.00 from Farmers State Bank. Farmers State Bank has a perfected security interest in all of Super Spray Booms assets, including the two patents. Beggs and his wife, Plaintiff Julianne Beggs, personally guaranteed the notes.

2.1.4. A customer of Super Spray Booms, Okray Enterprises ("Okray"), contributed $150,000.00 to the Super Spray Booms. Okray also was made a shareholder in the company.

2.1.5. In 2002, while Beggs was negotiating with an implement distributor for the use of the patents, Beggs was approached by Defendant Bismarck Phoenix about the possible assignment of the patent rights to it.

2.1.6. After viewing the "Super Spray Boom" in the field, Bismarck Phoenix expressed interest in obtaining the rights to the design and the parties entered into negotiations to assign the patents to Bismarck Phoenix.

2.1.7. On or about mid-January, 2003, the parties, along with Okray Enterprises, Inc. ("Okray"), which is not a party to this lawsuit, entered into a Master Agreement, a Patent Assignment Agreement, a Consulting Agreement, and a Trademark License Agreement.

2.2. <u>The Master Agreement</u>

2.2.1. Sections 1 and 2 of the Master Agreement state that Bismarck Phoenix must (1) comply with (i.e., make payments in accordance with) the Patent Assignment Agreement; (2) comply with (i.e., make payments in accordance with) the Consulting Agreement; and, (3) purchase one complete spray boom from Hi Tech Welding, a creditor of Super Spray Booms, to assist the latter in meeting its financial obligations.

2.2.2. Under Section 3.1 of the Master Agreement, Super Spray Booms, Beggs, and Okray agreed to secure an extension of a loan owed by Super Spray Booms to Farmers State Bank of Waupaca, Wisconsin ("Farmers State Bank"). Under Section 3.2 of the agreement, Super Spray Booms agreed to negotiate a debt repayment program with all remaining creditors of Super Spray Booms (including acquisition of Okray's outstanding shares).

2.2.3. Section 3.2.1 of the Master Agreement states that Okray and Super Spray Booms jointly agree to the repurchase of shares of Super Spray Booms held by Okray.

2.2.4. Sections 3.3 and 3.5 of the Master Agreement provides that Beggs and Okray will grant Bismarck Phoenix an option to purchase all issued and outstanding shares of Super Spray Booms and to deposit those shares in escrow until the expiration of the option period, set to commence on January 1, 2008 and expire December 31, 2012. During the option period, Beggs and Okray further agreed to keep Super Spray Booms in good standing and to conduct business in such manner as to keep and uphold the reputation of Super Spray Booms.

2.2.5. According to Section 3.3 of the Master Agreement, in exchange for the option to purchase the shares of Super Spray Booms, Bismarck Phoenix agrees to secure the

release of Beggs and Okray with respect to any personal guarantees on any debts of Super Spray Booms remaining at the close of the option, or December 31, 2012.

2.2.6. Sections 3.4 and 3.6 of the Master Agreement state that Super Spray Booms agrees to terminate the exclusive license agreement under the licensed patents and return the licenses to Beggs, and to license the trademark "Super Spray Booms" to Bismarck Phoenix.

2.3   The Patent Assignment Agreement

2.3.1   Section 3 of the Patent Assignment Agreement states that Beggs must assign all rights to the patents and pending patent applications to Bismarck Phoenix, warranting that he was the sole owner of the patents and applications, that they had not been assigned to any other party (except the previous license to Super Spray Booms), and that they were subject only to a security interest held by Farmers State Bank.

2.3.2   Section 5 of the Patent Assignment Agreement states that Bismarck Phoenix must (1) pay to Beggs a base royalty of four percent (4%) on sales within the territory (defined as any country in which the patents had been filed and includes the United States, Canada, and Europe), (2) pay to Beggs a base royalty of two percent (2%) on extraterritorial sales, (3) make minimum royalty payments to Beggs of $50,000.00 per year, in monthly increments of $4,166.00, with the first payment due upon contract execution, (4) keep separate, detailed, and clear accounts of sales, and submit quarterly royalty reports and sales accountings, (5) pay ongoing expenses and patent maintenance fees to keep the patents in good standing, including fees to file the patents in Australia, Brazil, Canada, and Europe.

2.3.3   Sections 8.1 and 8.2 of the Patent Assignment Agreement states that in the event of breach by either party, written notice of breach must be provided and a sixty (60) day-period given within which the breaching party may rectify the breach.

    2.3.4 Section 8.4 of the Patent Assignment Agreement states "ASSIGNOR shall have the right to terminate this agreement immediately in the event that Bismarck Phoenix fails to make the agreed upon payments to Super Spray Booms, LLC pursuant to the Consulting Agreement of the same date hereof between Super Spray Booms, LLC and Bismarck Phoenix, Inc.

    2.3.5 Section 9.1 of the Patent Assignment Agreement states that if the agreement is terminated for any reason other than a breach by Beggs, "all right, title and interest in the Subject Patents shall immediately be reassigned to ASSIGNOR. In such event, ASSIGNEE shall sign any and all documents requested by ASSIGNOR for the purpose of documenting such reassignment of the Subject Patents and recording such reassignment..."

    2.3.6 Section 13 of the Patent Assignment Agreement provides that if a dispute between the parties cannot be resolved through good faith negotiations, the parties will submit to arbitration.

    2.3.7 Section 12.2 of the Patent Assignment Agreement provides that in the event that there is a disagreement between the parties, the parties shall submit this disagreement to arbitration.

  2.4 <u>The Consulting Agreement</u>

    2.4.1 Section 1 of the Consulting Agreement states that Super Spray Booms must:

> provide professional consulting services to [Bismarck Phoenix] in the Field during the Term of this Agreement. In this regard, [Super Spray Booms] shall advise and assist [Bismarck Phoenix] in the creation and development of new products in the Field that incorporate proprietary technology licensed by [Bismarck Phoenix] from Bob Beggs, and in particular:
> - redesign of 150 foot boom

- redesign of spray boom to accommodate request from CASE for a common "Bob-Tail" to use on all their sprayers
- marketing assistance including attendance at trade shows

2.4.2 Section 3 of the Consulting Agreement obligates Super Spray Booms to "be responsible for providing advising and assisting [Bismarck Phoenix] with respect to the field and in particular the specific projects identified in paragraph 1A above..." and to "confer regularly...with [Bismarck Phoenix] regarding the status of the Projects."

2.4.3 Section 4 of the Consulting Agreement requires Bismarck Phoenix to pay Super Spray Booms "an initial consulting fee in the sum of twenty-one thousand dollars ($21,000.00) payable upon execution of this agreement, together with an on going consulting fee in the amount of eight thousand U.S. Dollars ($8000.00) per month commencing January 1, 2003."

2.4.4 Section 8 states that in the event of breach of a material provision by either party, the agreement states that written notice must be provided and thirty-day given within which the breaching party may cure. If a breach is not cured, or is not curable, within thirty-days, either party may terminate the agreement.

2.5    Trademark License Agreement

2.5.1 Pursuant to Section 1 of the Trademark License Agreement, Super Spray Booms grants Bismarck Phoenix the "non-exclusive, non-transferable, royalty-free license to use the [name and mark "Super Spray Booms"] in connection with the manufacture, use, sale and marketing of [agricultural sprayers and related products]."

2.5.2 Section 6 of the Trademark License Agreement states that "[Super Spray Booms] shall have the right to immediately terminate this Agreement upon failure of [Bismarck Phoenix] to comply with any provisions of this Agreement."

2.6 <u>Obligations to Okray and Farmers State Bank</u>

2.6.1 As noted at paragraph 2.2.2 of Plaintiffs' Complaint, Section 3.1 of the Master Agreement states:

> SUPER SPRAY BOOMS, BEGGS and OKRAY agree to secure an extension of their existing loan with FARMERS STATE BANK for a period of 60 months based upon the minimum payments provided in Documents 1 and/or 2, BISMARCK PHOENIX is to be provided with evidence thereof;

2.6.2 To fulfill their contractual obligation to Bismarck Phoenix under Section 3.1 of the Master Agreement, Okray, Beggs, and Super Spray Booms) continued payments to Farmers State Bank to on the two loans taken by Super Spray Booms.

2.6.3 As noted at paragraph 2.2.3 of Plaintiffs' Complaint, Section 3.2.1 of the Master Agreement states:

> OKRAY agrees to receive monthly payments from SUPER SPRAY BOOMS in an amount mutually agreed to by SUPER SPRAY BOOMS and OKRAY to retire debt from SUPER SPRAY BOOMS and for SUPER SPRAY BOOMS to acquire OKRAY'S outstanding shares and ownership interest. Such payments shall comments in 2003 and continue until the debt is retired and outstanding shares acquired.

2.6.4 To fulfill their contractual obligations to Bismarck Phoenix under Section 3.2.1 of the Master Agreement, Super Spray Booms and Okray entered into an agreement for the repurchase of Okray's shares and retirement of that debt. <u>See</u> Beggs Aff. Ex. E (hereinafter "Share Reacquisition Agreement").

### III. **BREACH OF CONTRACT**

3.1 Plaintiffs hereby incorporate paragraphs 1.1 through 2.6.4 above.

3.2     Bismarck Phoenix agreed to make monthly royalty payments of $4,166.00 to Beggs.

3.3     Bismarck Phoenix agreed to pay monthly consulting fees of $8,000.00 plus a lump sum payment of $21,000.00 to Super Spray Booms.

3.4     In return, Super Spray Booms, Beggs, and Okray agreed to make payments on the loans with Farmers State Bank. Super Spray Booms agreed to retire its debt to Okray.

3.5     In January 2004, Bismarck Phoenix made only partial payments to Beggs and Super Spray Booms, reducing the amounts by half to $4,000.00 and $2,083.00, respectively.

3.6     From July 2004 to November 2004, Bismarck Phoenix made full payments to Beggs. Since November 2004, Bismarck Phoenix has failed to make any payment to Beggs.

3.7     From July 2004 to January 2005, Bismarck Phoenix made only half payments to Super Spray Booms. Since January 2005, Bismarck Phoenix has failed to make any payment to Super Spray Booms.

3.8     Bismarck Phoenix currently owes $62,490.00 in back payments to Beggs.

3.9     Bismarck Phoenix currently owes $132,000.00 in back payments to Super Spray Booms.

3.10    Because Bismarck Phoenix failed to make payment according to the agreements, Super Spray Booms has been unable to meet its obligations to Okray under the Share Reacquisition Agreement as required by the Master Agreement. Okray is currently owed $36,000.00.

3.11    Because Bismarck Phoenix failed to make payment according to the agreements, Super Spray Booms, Beggs, and Okray have been unable to make payments to Farmers State Bank as required by the Master Agreement. Super Spray Booms has negotiated an extension on

its loans with Farmers State Bank. Farmers State Bank will be in a position to foreclose on the assets of Super Spray Booms, including the patents after April, 2006. Farmers State Bank is owed approximately $166,810.72 in principal and interest, with interest accruing at approximately $40.57 per day.

## IV. **ARBITRATION**

4.1   Arbitration

4.1.1   On January 17, 2005, Beggs notified Bismarck Phoenix in writing that it was in breach of contract.

4.1.2   As previously noted, the Patent Assignment Agreement provides for arbitration. In July 2005, Beggs gave Notice of Arbitration. During late summer 2005, the parties began negotiations regarding possible arbitration, but have been unable to agree on an appropriate arbitration format.

4.1.3   Bismarck Phoenix now insists that it needs a full year to prepare for arbitration.

## IV.   **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs pray for judgment as follows:

1.   For an Order compelling expedited arbitration by April 15, 2006;

2.   For preliminary injunctive relief ordering Defendant Bismarck Phoenix: (a) to submit minimum amounts required to prevent foreclosure and collection proceedings by Farmers State Bank, or (b) to submit all proceeds from current and future sales of products based upon the patents, up to the amount past due and owing, to be applied to debts held by Farmers State Bank; and, (c) to refrain from the sale and manufacture of any product which would constitute infringement if sold or manufactured by party other than the patent holder;

3. Alternatively, if arbitration is not ordered:

   a. For monetary damages in excess of $194,000;

   b. For prejudgment interest in accordance with North Dakota law;

   c. For postjudgment interest at the legal rate;

   d. For costs, disbursements, and reasonable attorneys' fees;

4. For other such relief as the Court finds reasonable and just.

Dated this 5 day of December, 2005.

John J. Petrik (#03936)
VOGEL LAW FIRM
200 N. 3rd Street, Suite 201
P. O. Box 2097
Bismarck, ND 58502-2097
(701) 258-7899
Attorneys for Plaintiffs