**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | |
|---|---|
| Robert D. Beggs and Julian C. Beggs, ) <br> and Super Spray Booms, LLC, ) <br>                                                  ) <br>                   Plaintiffs, ) <br>                                                  ) <br> vs.                                           ) <br>                                                  ) <br> Bismarck Phoenix Equipment, Inc., ) <br>                                                  ) <br>                   Defendant. ) | **ORDER GRANTING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION, IN PART** <br><br> Case No. 1:05-cv-126 |

Before the Court is the Plaintiffs' Motion for a Preliminary Injunction filed on December 5, 2005. The Defendants have failed to respond to the motion.[1] For the reasons set forth below, the motion is granted, in part.

**I.   BACKGROUND**[2]

In the late 1990s, the plaintiff, Robert D. Beggs (Beggs), developed a telescoping aluminum spray boom for use in his custom crop spraying/fumigation business. Beggs applied for and received two patents for the device, which he named the "Super Spray Boom." Beggs then formed a company, Super Spray Booms, LLC, (Super Spray Booms) to manufacture and market the new spray booms. Beggs entered into a license agreement with Super Spray Booms, granting it the exclusive right to the patents. Beggs also obtained a Small Business Administration loan through

---

[1] The record reveals that the Defendant admitted service of the complaint and the motion for a preliminary injunction on December 12, 2005. Pursuant to Local Rule 7.1(C), "failure to file a brief by the adverse party may be deemed an admission that, in the opinion of counsel, the motion is well taken."

[2] Because of the Defendant's failure to file a response to the motion for a preliminary injunction, the background of this dispute is based solely on the information the Plaintiffs provided the Court. The Court's recitation of the background should not be interpreted as findings of fact as to the merits of the case.

1

Farmers State Bank of Waupaca, Wisconsin (Farmers State Bank), in the amount of $150,000 to cover the start-up costs of Super Spray Booms. Beggs and his wife, plaintiff Julianne Beggs, personally guaranteed the loan and used the patents as security. Eventually, one of Beggs' customers, Okray Enterprises, invested $150,000 in Super Spray Booms and became a shareholder. In 2001, Super Spray Booms borrowed an additional $45,000 from Farmers State Bank to finance the manufacturing of additional spray boom units.

In 2000, Beggs began discussions with various equipment manufacturers who were interested in either purchasing completed spray booms from Super Spray Booms or in purchasing the patents and manufacturing the spray booms themselves. Ultimately, Beggs entered into agreements with the defendant, Bismarck Phoenix Equipment, Inc., (Bismarck Phoenix). Bismarck Phoenix wanted to purchase the rights to manufacture and sell the Super Spray Boom. According to Beggs, because Bismarck Phoenix wanted to purchase Super Spray Booms, a central aspect of the parties' negotiations was to ensure that Super Spray Booms remained in good standing and conducted business so as to uphold the reputation of the company. The parties agreed that the debt of Super Spray Booms would be managed and repaid, including the two primary debts of Super Spray Booms – the outstanding share of Super Spray Booms held by Okray Enterprises and the Small Business Administration loan with Farmers State Bank. The parties included as an explicit term of the agreements, that Super Spray Booms would enter into an agreement with Okray to repurchase its shares and that Super Spray Booms would extend its existing loan with Farmers State Bank to ensure that Super Spray Booms would meet its loan obligations and limit the possibility of foreclosure.

Four agreements were drafted to memorialize the bargain between Beggs, Super Spray Booms, and Bismarck Phoenix. In January 2003, the parties executed the Master Agreement, the Patent Assignment Agreement, the Consulting Agreement, and the Trademark Licensing Agreement. Okray Enterprises and Super Spray Booms also entered into an agreement for the repurchase of Okray's shares of Super Spray Booms. Pursuant to the agreements, Bismarck Phoenix agreed to make royalty payments to Beggs for the use of the patents and to make payments to Super Spray Booms for its consulting services. In return, Beggs and Super Spray Booms, as well as Okray Enterprises, agreed that (1) the patents would be assigned to Bismarck Phoenix, (2) Super Spray Booms' debt to Okray and Farmers State Bank would be repaid, (3) Bismarck Phoenix would have the option to purchase Super Spray Booms, and (4) Super Spray Booms would be kept active and in good standing.

Beggs and Super Spray Booms allege that they have performed according to the agreements. The patents and the rights to the "Super Spray Booms" technology were assigned to Bismarck Phoenix. Super Spray Booms was available to provide marketing and technical assistance to Bismarck Phoenix. Super Spray Booms contracted with Okray for the repurchase of its shares, and Super Spray Booms and Okray jointly established a debt repayment schedule with Farmers State Bank.

Beggs asserts that from December 2002 to December 2003, Bismarck Phoenix met its contractual obligation, making monthly payments of $4,166 to Beggs pursuant to the Patent Assignment Agreement and $8,000 to Super Spray Booms, in addition to the one-time lump sum payment of $21,000, pursuant to the Consulting Agreement. In turn, Super Spray Booms remitted

payments to Okray, in order to retire its outstanding debt, and to Farmers State Bank, to service the loan and prevent foreclosure.

In early 2004, Bismarck Phoenix explained to Beggs and Super Spray Booms that, due to lower than expected cash flows, it was having difficulty meeting its contractual obligations. Beggs and Super Spray Booms agreed to accept payments of one-half of the amount due for the next six months, with the understanding that Bismarck Phoenix would increase later payments to cover the deficit. Bismarck Phoenix made these partial payments from January 2004 through June 2004. At that time, Bismarck Phoenix resumed full payment to Beggs under the Patent Assignment Agreement, but continued to make half payments to Super Spray Booms under the Consulting Agreement. In December 2004, Bismarck Phoenix ceased making payments to Beggs, and in February 2005, Bismarck Phoenix ceased making payments to Super Spray Booms.

On January 17, 2005, Beggs notified Bismarck Phoenix in writing that it was in breach of contract with both Beggs and Super Spray Booms. Bismarck Phoenix responded that it intended to commence suit against Beggs, alleging that Beggs provided it with misleading information regarding the patents. On July 22, 2005, the Plaintiffs sent Bismarck Phoenix a notice of arbitration. Paragraph 13.1 of the Patent Assignment Agreement provides as follows:

> In the event of any dispute between the parties in connection with this agreement which cannot be resolved by the parties after good-faith negotiations, the parties agree to submit the dispute to a single arbitrator jointly designated by the parties. The arbitrator shall resolve the dispute in accordance with rules of The American Arbitration Association. In the event the parties cannot concur on a single arbitrator, the dispute shall be resolved by three arbitrators, one to be appointed by each party and the third to be selected by the other two.

Patent Assignment Agreement, ¶ 13.1 (Docket No. 5, Exhibit B).  A series of letters and e-mails between counsel for the parties failed to produce a mutually-agreeable plan for arbitration, even though the parties all appeared to be amenable to arbitration.

Beggs asserts that because of Bismarck Phoenix's breach, Super Spray Booms is no longer able to make payment to either Okray or Farmers State Bank, as required by the agreements.  As a result, Beggs contends that (1) the patents are at serious risk of foreclosure, (2) Super Spray Booms faces bankruptcy, and (3) Beggs and his wife, Julianne Beggs, are at risk of being subject to collection proceedings by Farmers State Bank because of their personal guarantees of the loan.  Finally, Beggs contends that because the contract provides for the immediate return of the patent and patent applications, which constantly decline in value as time passes, any delay by Bismarck Phoenix in returning the patents imposes an opportunity-cost to Beggs which can never be recovered.

On December 5, 2005, the Plaintiffs filed suit and filed a motion for a preliminary injunction requesting an order granting a preliminary injunction requiring Bismarck Phoenix:  (1) to compel the parties to submit to expedited arbitration, pursuant to the contract between the parties, on or before April 15, 2006; and (2) to either (a) submit minimum amounts required to prevent foreclosure and collection proceedings by Farmers State Bank, or (b) to submit all proceeds from current and future sales of products based upon the patents, up to the amount past due and owing, to be applied to debts held by Farmers State Bank; and, (c) to refrain from the sale and manufacture of any product which would constitute infringement if sold or manufactured by a party other than the patent holder.

## II.     LEGAL DISCUSSION

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, in determining whether a preliminary injunction should be issued, the Court must look to the specific facts shown by affidavit(s) to determine whether immediate and irreparable injury, loss, or damage will result to the applicant. In determining whether preliminary injunctive relief should issue, the Court is required to consider the factors set forth in Dataphase Systems, Inc., v. C.L. Sys. Inc., 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*). The Eighth Circuit summarized those factors as follows:

> When considering a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest. Dataphase Systems, Inc. v. C.L. Sys. Inc., 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*). We reverse the issuance of a preliminary injunction only if the issuance "is the product of an abuse of discretion or misplaced reliance on an erroneous legal premise." City of Timberlake v. Cheyenne River Sioux Tribe, 10 F.3d 554, 556 (8th Cir. 1993) *cert. denied* 512 U.S. 1236, 114 S.Ct. 2741, 129 L.Ed. 2d 861 (1994).

Pottgen v. Missouri State High School Activities Association, 40 F.3d 926, 929 (8th Cir. 1994).

The burden of establishing the necessity of a temporary restraining order or a preliminary injunction is on the movant. Baker v. Electric Co-op, Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer System, Inc. v. Modern Banking System, Inc., 871 F.2d 734, 737 (8th Cir. 1989) (*en banc*). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." Baker Electric Co-op, 28 F.3d 1466, 1472 (quoting Calvin Klein Cosmetics Corporation v. Lenox Labs, Inc., 815 F.2d 500, 503 (8th Cir. 1987)).

### A.     **PROBABILITY OF SUCCESS ON THE MERITS**

Plaintiffs allege a single breach of contract claim against Bismarck Phoenix for failure to make minimum payments required by the Master Agreement, the Patent Assignment Agreement, and the Consulting Agreement. However, the exhibits submitted by the Plaintiffs reveal that Bismark Phoenix has proffered an apparent excuse for its non-payment. In correspondence between the parties, Bismarck Phoenix has suggested Beggs misrepresented the nature of the patents, and, as a result, Bismarck Phoenix has been forced to expend considerable cost in redesigning the patents. See Letter from David D. Schweigert, attorney for Bismarck Phoenix, to Ben Gage, attorney for Robert Beggs, dated May 4, 2005, (Docket No. 5, Exhibit H).

Anticipating Bismark Phoenix's warranty defense, the Plaintiffs assert it does not diminish their likelihood of success on the merits. The Plaintiffs contend the Agreements did not contain any express warranties by Beggs except a warranty of title. The Plaintiffs also assert that Bismarck Phoenix was represented by counsel throughout the negotiation and drafting of the agreements and that if Bismarck Phoenix expected the design and prototype of the product to be warranted, the Agreements should have contained language to that effect. The Plaintiffs also contend that any implied warranty assertions by Bismarck Phoenix would also fail.

When evaluating a movant's "likelihood of success on the merits" the Court should "weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires [intervention] to preserve the status quo until the merits are determined." Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp., 59 F.3d 80, 83 (8th Cir. 1995). The Eighth Circuit has held that of the four factors to be considered by the district court in

7

considering preliminary injunctive relief, the likelihood of success on the merits is "most significant." S&M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992).

Bismarck Phoenix's failure to file a response hampers the Court's evaluation of the likelihood of the Plaintiffs' success on the merits of their breach of contract claim. Nevertheless, the Court finds that the balance of equities strongly favor the Plaintiffs at this stage. The Plaintiffs have set forth a classic case of breach of contract for failure to pay. The Court finds that taking steps to ensure the patents are not foreclosed upon until the merits of this dispute are determined is clearly the favored approach. Accordingly, the Court finds this factor weighs in favor of the issuance of a preliminary injunction.

B.     **IRREPARABLE HARM**

The Plaintiffs argue that if injunctive relief is not granted, irreparable harm will unquestionably occur. It appears that Farmers State Bank will likely foreclose on the patents if it does not receive payment. See Affidavit of Fran Vergauwen, President of Farmer State Bank, ¶¶ 6-7 (Docket No. 6). The Plaintiffs predict that if the patents are foreclosed upon and sold at a foreclosure sale, it is unlikely that either Beggs or Super Spray Booms would be in a financial position to make the winning bid. As a result, Beggs could permanently lose the exclusive rights to his invention. In addition, the Plaintiffs assert that Super Spray Booms would likely face bankruptcy. Super Spray Booms has licensed its sole productive asset (the patented technologies) to Bismarck Phoenix. Finally, the Plaintiffs contends that even if Farmers State Bank did not foreclose on the patents, the Plaintiffs would suffer irreparable harm. The Plaintiffs assert that Bismarck Phoenix has failed to reassign the patents to Beggs upon breach of the agreements, and,

as a result, Beggs is prevented from marketing the patents on his own or assigning them to some third party.

The Court recognizes that the assets at the heart of this dispute are patents and that a patent is a unique asset whose value lies in the fact that it guarantees the exclusive right to own that unique technology for a limited period of time only.  Therefore, in a dispute surrounding the rights to a patent, time is of the essence.  The Court finds that the Plaintiffs have established that they would likely suffer irreparable harm if a preliminary injunction  was not issued at this stage of the litigation.  Therefore, this factor weighs in favor of the Plaintiffs.

### C.     BALANCE OF HARM

The Plaintiffs also contend that Bismarck Phoenix would suffer only minimal harm if the Court were to issue the requested preliminary injunction and that any harm Bismarck Phoenix may suffer could be compensated through monetary damages.  The Plaintiffs argue that if the Court ordered that arbitration be completed by April 11, 2006, the matter would be resolved prior to the due date of the loans at Farmers State Bank.  Additionally, the Plaintiffs contend that if the Court were to order that Bismarck Phoenix submit even minimal payments to Beggs and Super Spray Boom, such payments could prevent foreclosure on the patents by Farmers State Bank – an action that the Plaintiffs assert will benefit all parties involved.  Further, the Plaintiffs assert that their request to prohibit Bismarck Phoenix from the sale or manufacture of any product which would constitute an infringement if sold or manufactured by a party other than the patent holder, would merely require Bismarck Phoenix to abide by the terms of the Agreement which provide for the reassignment of the patents if the contract is breached.  In sum, the Plaintiffs contend that granting

the requested preliminary injunction would prevent Bismarck Phoenix from reaping the benefits for which it neither bargained nor paid.

The Court finds that a preliminary injunction would protect the patents at issue. However, it is unclear whether Bismarck Phoenix has the financial ability to make even the minimal payments requested by the Plaintiffs given Bismarck Phoenix's admitted financial difficulties or what "the minimum amounts required to prevent foreclosure and collection proceedings" would be. Once again, Bismarck Phoenix's failure to respond to the Plaintiffs motion hinder the Court's evaluation of this factor. Nevertheless, the Court finds that to maintain the status quo would not create a hardship for either party and is clearly the wise and prudent approach to take. This factor weighs in favor of the issuance of injunctive relief.

### D.   PUBLIC INTEREST

The Plaintiffs assert that the system of issuing patents ensure that the public will have access to technological advances developed by intellectual entrepreneurs and that allowing Bismarck Phoenix to breach its contract to pay for access to patents, it will hinder future inventors will have fewer incentives to disseminate their designed to the general public. The Court finds that the public interest would be best served by the issuance of a preliminary injunction at this stage of the litigation. This factor weighs in favor the issuance of a preliminary injunction

### III.   CONCLUSION

After having carefully considered the Complaint, the Motion for Preliminary Injunction, the briefs and accompanying exhibits of the Plaintiffs, the Court **GRANTS** the Plaintiff's Motion for

a Preliminary Injunction. (Docket No. 4). The Court **ORDERS** that the parties submit to expedited arbitration pursuant to the Patent Assignment Agreement to be completed on or before April 15, 2006. The requirement for security under Rule 65(c) is waived.

The Court reserves ruling on the portion of the Plaintiffs motion for a preliminary injunction which requests alternative relief, to prevent the foreclosure on the patents, until after a hearing. To that end, the Court **ORDERS** the parties to appear on Thursday, January 19, 2006, at 1:30 p.m. in Bismarck, North Dakota, for a hearing concerning the alternative relief requested. Specifically, the parties should be prepared to address the alternative relief proposed by the Plaintiffs to prevent the foreclosure on the patents. In the event the parties are able to resolve matters concerning the alternative relief requested, this hearing will not be needed. However, the parties are **ORDERED** to promptly inform the Court if they have informally resolved all issues pertaining to the need for alternative relief as requested in the motion for a preliminary inunction.

The United States Marshal Service is directed to serve the parties as set forth in Local Rule 65.2.

**IT IS SO ORDERED.**

Dated this 5th day of January, 2006.

_____
Daniel L. Hovland, Chief Judge
United States District Court